UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

|  |  |
|---|---|
| MORGAN KEEGAN & COMPANY, INC., | Case No. 1:11-CV-00126-EJL |
| Plaintiff, | **MEMORANDUM ORDER** |
| v. | |
| PEGGY A. DRZAYICK, ANTHONY and CAROLYN VAN CATTENBURCH, ROGER and MARTHA CONNOR, DAN TENNENT, THE BRIDGE INC., and PATRICIA THOMAS | |
| Defendants. | |

Pending before the Court in the above-entitled matter is Plaintiff Morgan Keegan & Company, Inc.'s ("Morgan Keegan") Motion for Preliminary Injunction, Dkt. 2. Having fully reviewed the record, the Court finds that the facts and legal arguments are adequately presented in the briefs and record. Accordingly, in the interest of avoiding further delay, and because the Court conclusively finds that the decisional process would not be significantly aided by oral argument, this matter shall be decided on the record before this Court without oral argument.

**MEMORANDUM ORDER - 1**

## FACTUAL BACKGROUND

On Mach 28, 2011, Morgan Keegan filed a Complaint for Declaratory Judgment and Injunctive Relief against Defendants Peggy A. Drzayich, Anthony and Carolyn Van Cattenburch, Roger and Martha Connor, Dan Tennent, The Bridge Inc. and Patricia Thomas (collectively referred to as "Defendants"), Dkt. 1. Morgan Keegan seeks declaratory and injunctive relief to preclude Defendants from pursuing an arbitration proceeding they have filed against Morgan Keegan before the Financial Industry Regulatory Authority ("FINRA"). Morgan Keegan argues it does not have an agreement with Defendants to arbitrate and that Defendants are not customers of Morgan Keegan as required by FINRA rules.

Morgan Keegan is a regional broker-dealer incorporated under the laws of the state of Tennessee, with its principal place of business in Memphis, Tennessee. Defendants are believed to be residents of state of Idaho, except for The Bridge Inc., which is a non-profit corporation incorporated and doing business in New Jersey. On December 10, 2010, Defendants initiated an arbitration proceeding against Morgan Keegan before the FINRA (FINRA Case No. 11-00027). Defendants requested and the FINRA selected the arbitration should be held in Boise, Idaho. Defendants assert the following claims against Morgan Keegan in the arbitration: common law fraud; violation of the Idaho securities laws; violation of § 10(b) of the Securities Exchange Act of 1934; violation of S.E.C. Rule 10b-5; violation of §§ 11, 12(a)(2), and 15 of the Securities Act of 1933; violation of the Tennessee Consumer Protection Act, and violation of FINRA Rule 2210. Morgan

Keegan denies it has liability relating to Defendants' claims.

Defendants' arbitration claims are related to their alleged purchases of shares in two closed-end, high yield funds: the RMK High Income Fund and the RMK Multi-Sector High Income Fund (collectively the "Funds"). It is undisputed that Defendants did not purchase the Funds from Morgan Keegan. Rather, Defendants purchased the shares in the Funds from an unrelated, third party broker-dealer, LPL Financial Inc. It is undisputed that Defendants have never entered into any written agreements (including an agreement to arbitrate claims) with Morgan Keegan nor have Defendants opened and maintained accounts with Morgan Keegan. Morgan Keegan was an underwriter for the initial public offering of the Funds, but Defendants did not purchase either fund in its initial public offering.

Morgan Keegan maintains Defendants are not "customers" of Morgan Keegan, so they are not subject to arbitration under FINRA. Defendants argue that because Morgan Keegan received .15% of the total assets held by the Funds as compensation for services and Defendants and/or their brokers relied on information obtained from Morgan Keegan regarding the Funds, "customer" should be broadly defined and should include Defendants.

## ANALYSIS

### 1. Question of Arbitrability is Court Matter

This Court finds that the question of arbitrability is for the court to decide. *Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.*, 622 F.3d 996, 998 (9th Cir. 2010). "[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers of America v. Warrior and Gulf Navigation Co.*, 363 U.S. 574, 582 (1960). Whether a party has consented to arbitration has long been recognized to be a question of law, to be decided by the court, not the arbitrator, "[u]nless the parties clearly and unmistakably provide otherwise." *AT & T Techs., Inc. v. Communications Workers*, 475 U.S. 643, 649 (1986). In determining whether the parties have agreed to arbitrate, "courts generally . . . should apply ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).

Morgan Keegan, as a FINRA member firm, is required to arbitrate disputes only where they contractually agreed to arbitrate with the claimant or the claimant is a customer of Morgan Keegan. Defendants concede that they did not have arbitration agreements with Morgan Keegan. Therefore, the threshold question of whether Defendants are "customers" of Morgan Keegan a legal matter that should be resolved by the court, instead of the arbitrator or the Director of FINRA.[1]

---

[1] The Court finds the Director of FINRA's denial of Morgan Keegan's motions to declare nearly identical claims non-artibable is not binding precedent on this Court and such decision need not be given deference by this Court. Auer v. Robbins, 519 U.S. 452 (1997).

## 2. Standard of Review for Preliminary Injunction

Preliminary injunctions are designed to preserve the status quo pending the ultimate outcome of litigation. While courts are given considerable discretion in deciding whether injunctive relief should be issued, injunctive relief is not obtained as a matter of right and it is considered to be an extraordinary remedy that should not be granted unless the movant, by a clear showing, carries the burden of persuasion. *See: Sampson v. Murray,* 415 U.S. 61 (1974)*; Brotherhood of Locomotive Engineers v. Missouri-Kansas-Texas R. Co.,* 363 U.S. 528 (1960); and *Stanley v. Univ. of Southern California,* 13 F.3d 1313 (9th Cir. 1994).

In each case, the district court "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Amoco Production Co. v. Gambell*, 480 U.S. 531, 542 (1987). The test for a temporary restraining order or a preliminary injunction are basically the same. In *Winter v. Natural Resource Defense Council, Inc.*, 555 U.S. 7 (2008), the United States Supreme Court held that, in order to be entitled to a preliminary injunction, the moving party must demonstrate (1) likelihood of success on the merits; (2) that he or she is likely to suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in his or her favor; and (4) that an injunction is in the public interest. 555 U.S. at 20; *see also, Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009).

Prior to the Supreme Court's ruling in *Winter*, the Ninth Circuit applied alternative tests in determining whether a preliminary injunction should be granted: "[a] preliminary

injunction is appropriate when a plaintiff demonstrates either: (1) a likelihood of success on the merits and the possibility of irreparable injury; or (2) that serious questions going to the merits were raised and the balance of hardships tips sharply in [the plaintiff's] favor." *Lands Council v. McNair*, 537 F.3d 981, 987 (9th Cir. 2008). The Ninth Circuit reasoned that "[t]hese two options represent extremes on a single continuum: the less certain the district court is of the likelihood of success on the merits, the more plaintiffs must convince the district court that the public interest and balance of hardships tip in their favor." *Id*. In *Winter*, the Supreme Court expressly disapproved the "possibility of harm standard," stating that "the Ninth Circuit's 'possibility' standard is too lenient . . . [and the proper] standard requires plaintiffs seeking preliminary relief to demonstrate that irreparable injury is *likely* in the absence of an injunction." 555 U.S. at 22 (emphasis in original). This left open the question, however, of whether the remaining aspects of the Ninth Circuit's sliding scale test for preliminary injunctions remained good law.[2]

---

[2] Justice Ginsburg addressed the sliding scale approach in her dissent in *Winter*. Justice Ginsburg stated that "[c]onsistent with equity's character, courts do not insist that litigants uniformly show a particular, predetermined quantum of probable success or injury before awarding equitable relief. Instead, courts have evaluated claims for equitable relief on a 'sliding scale,' sometimes awarding relief based on a lower likelihood of harm when the likelihood of success is very high. . . . This Court has never rejected that formulation, and I do not believe it does so today." 555 U.S. at 51 (Ginsburg, J. Dissenting)

**MEMORANDUM ORDER - 6**

The Ninth Circuit clarified the issue earlier this year in *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127 (9th Cir. 2011). In that case, the Court of Appeals held that although *Winter* had raised the bar on what must be shown on the irreparable harm prong to justify a preliminary injunction, it did not alter the district court's authority to balance the elements of the preliminary injunction test, so long as a certain threshold showing is made on each factor. 632 F.3d at 1134-35. The court in *Wild Rockies* stated that "the 'serious questions' approach survives *Winter* when applied as part of the four-element *Winter* test." *Id.* at 1135. In other words, "'serious questions going to the merits' and a hardship balance that tips sharply toward the plaintiff can support issuance of an injunction, assuming the other two elements of the *Winter* test are also met." *Id.*

Speculative injury does not constitute irreparable injury sufficient to warrant granting a preliminary injunction. *Goldie's Bookstore Inc. v. Superior Court*, 739 F.2d 466, 472 (9th Cir. 1984).

### 3. Likelihood of Success on the Merits

FINRA Rule 12200 provides FINRA members, like Morgan Keegan, must arbitrate a dispute under the Code if it is required by a written agreement or requested by the customer. However, FINRA does not define the term "customer" for purposes of Rule 12200. The Ninth Circuit has not defined the term "customer" in this context, so the Court must look to case law from other jurisdictions which have addressed this issue.

The Eighth Circuit has held that the term "customer" under Rule 12200 of FIRNA "refers to one involved in a business relationship with [a FIRNA] member that is related directly to investment or brokerage related services." *Fleet Boston Robertson Stephens, Inc. v. Innovex, Inc.*, 264 F.3d 770 (8th Cir. 2001). Investors are not customers of a broker-dealer if they have not "opened, maintained, controlled or traded in an account at [the broker-dealer] or entered into an account or customer agreement with [the broker-dealer]. *Interactive Brokers, LLC v. Duran*, No. 08-CV-6813, 2009 WL 393827 (N.. Illinois, Feb. 17, 2009). There are no facts indicating that Morgan Keegan was in any way directly involved in the purchases by Defendants. To find a brokerage or investment relationship under the facts of this case would have the effect of making every purchasers of shares in the Funds a customer of Morgan Keegan and that is too broad and an unrealistic application of the term "customer." Because it does not appear Defendants can establish that some brokerage or investment relationship existed with Morgan Keegan, it does not appear Defendants are customers that can seek FINRA arbitration against Morgan Keegan.

Defendants urge the Court to find the Defendants were customers based upon the fact that their broker and Defendants collectively relied on information obtained from Morgan Keegan's website and information given to the Defendants's broker by a Morgan Keegan representative. However, merely reviewing public disclosures and website

information does not create a customer relationship. *See Brookstreet Sec. Corp. v. Bristol Air, Inc.*, No. CV 02-0863, 2002 U.S. Dist. LEXIS 16784 (N.D. Cal. Aug. 5, 2002).

Moreover, while Morgan Keegan may have provided information on the Funds for the initial public offerings, the Defendants did not purchase their shares in the Funds during the initial public offerings, so it would be unfair to create a customer relationship based on this initial public offering information that was available online.

The Court finds that Morgan Keegan is likely to succeed on the merits of its legal claims. There was no agreement between the parties to arbitrate, there was no customer relationship between Morgan Keegan and the Defendants are not "customers" of Morgan Keegan. This finding is consistent with other courts that have examined similar factual scenarios. *See e.g., Zarecor v. Morgan Keegan & Company, Inc.*, Civ. Action No. 4:10CV01643-SWW, entered July 29, 2011 in the Eastern District of Arkansas, Western Division; *Charles Schwab & Co., Inc. v. Reaves*, No. CV-2590, 2010 WL 447370 (D. Ariz. Feb. 4, 2010); *Herbert J. Sims & Co., Inc. v. Roven*, 548 F. Supp. 2d 759, 766 (N.D. Cal. 2008); *Proshares Trust v. Schnall*, 695 F. Supp 2d 76, 80 (S.D.N.Y. 2010).

**4. Adequate Remedy and Irreparable Harm.**

Many courts have held that "forcing a party to arbitrate a dispute that it did not agree to arbitrate constitutes per se irreparable harm." *See Chicago School Reform Board of Trustees v. Diversified Pharm. Servs., Inc.*, 40 F.Supp.2d 987, 996 (N.D.Ill.1999); *see also McLaughlin Gormley King Co. v. Terminix Int'l Co.*, 105 F.3d 1192, 1194 (8th Cir.1997); *PaineWebber Inc. v. Hartmann*, 921 F.2d 507, 515 (3d Cir.1990); *Mount*

**MEMORANDUM ORDER - 9**

*Ararat Cemetery v. Cemetery Workers and Greens Attendants Union, Local 365*, 975 F.Supp. 445, 447 (S.D.N.Y.1997). This Court agrees with the reasoning of those courts.

In certain circumstances, the Supreme Court has made it clear that arbitration is a favored form of dispute resolution, but it also has made it clear that a party cannot be forced to arbitrate issues that it did not agree to arbitrate. *See, e.g., AT & T Techs., Inc. v. Communications Workers*, 475 U.S. 643, 649 (1986). Forcing a party to arbitrate a matter that the party never agreed to arbitrate, unalterably deprives the party of its right to select the forum in which it wishes to resolve disputes. *See Sokol Holdings Inc. v. BMB Munai, Inc.*, 542 F.3d 354, 358 (2d cir. 2008). Thus, the Court finds that Morgan Keegan has demonstrated that it will suffer irreparable harm if an injunction is not entered and it is forced to proceed with arbitration.

### 5. Balancing of Harms

The harm that Defendants would suffer if the Court issues an erroneous preliminary injunction would be a delay in the arbitration proceedings while this Court determines whether Morgan Keegan can be forced to arbitrate. If the Court ultimately rules in favor of Defendants, Defendants could proceed with their arbitration at that time. On the other hand, and in light of Morgan Keegan's likelihood of success on the merits, the harm that Morgan Keegan would suffer if the injunction were erroneously denied would be irreparable, as Morgan Keegan would have been compelled to arbitrate a dispute that it did not agree to arbitrate. Given that a preliminary injunction simply will delay the arbitration in its early stages until this Court conclusively decides the

underlying issues, the balance of hardships tips in Morgan Keegan's favor.

### 6. Public Interest

The Court acknowledges that the public interest "generally favors arbitration, this policy is based on the presumption that the subject of the arbitration is one that the parties actually agree to arbitrate." *Chicago School Reform Board of Trustees*., 40 F.Supp.2d at 996–97. *See also, Volt Information Sciences v. Board of Trustees*, 489 U.S. 468, 475 (1989). In the case at bar, there is no agreement to arbitrate and the Court finds the public interest will be served because a preliminary injunction will minimize the risk that the parties will suffer the inconvenience, cost, and delay associated with arbitration only to have any resulting award vacated for lack of jurisdiction.

### 7. Conclusion

For all the above reasons, the Court finds Plaintiff Morgan Keegan is entitled to a preliminary injunction to be entered in this case.

## ORDER

**IT IS ORDERED** that Morgan Keegan's Motion for Preliminary Injunction (Dkt. 2) is GRANTED and Defendants are enjoined from pursuing claims against Morgan Keegan in the FINRA arbitration proceeding Defendants instituted on December 30, 2010, FINRA Case No. 11-00027.

SO ORDERED.



DATED:  **November 8, 2011**

Honorable Edward J. Lodge
U. S. District Judge

**MEMORANDUM ORDER - 12**